IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Bench Billboard Company,                                    Case No. 3:07CV2027

                            Plaintiff

            v.                                              ORDER

City of Toledo,

                            Defendant

This is a suit by plaintiff Bench Billboard Company (BBC) about the City of Toledo's regulation of bus stop courtesy benches. Toledo enacted a new ordinance regulating such benches TMC §§ 719.01–11, in February, 2007. Among other things, the ordinance required BBC to place trash receptacles by the benches and keep the area free of snow and debris.

BBC filed this suit under 42 U.S.C. § 1983, alleging that the ordinance violates its right to freedom of speech, equal protection, and due process. BBC also asserted a cause of action under Ohio common law for tortious interference with prospective economic advantage.

On the parties' cross-motions for summary judgment, I held: 1) two provisions of the ordinance are violate the First Amendment; 2) these two provisions are severable from the remainder of Chapter 719; 3) BBC failed to show an equal protection violation; 4) Section 1983 does not create substantive rights; and 5) because Toledo had not removed any of BBC's benches, Toledo had not tortiously interfered with BBC's prospective economic relationships. [Doc. 44]; *Bench Billboard v. City of Toledo*, 690 F. Supp. 2d 651 (N.D. Ohio 2010).

I therefore granted BBC's motion for summary judgment (and denied Toledo's counter-motion) as to the ordinance's prohibition on political speech and allowance of revocation based on a finding that the bench is "prejudicial to the interest of the general public," and denied the motion (and granted Toledo's counter-motion) as to BBC's other claims. *Id.*

Pending is BBC's motion for attorney's fees and costs. [Doc. 54]. For the reasons discussed below, BBC's counsel may submit a final time and fee statement in accordance with the following opinion.

## Background

Toledo's reason for adopting the ordinance was that "[t]he current ordinance specifies the permitting and placement of these structures along with some general guideline but has no language regarding the maintenance, sanitation, and conditions of the permit. It is necessary to add specific provisions to the code in order to better enforce this chapter of the code." [Doc. 32–1]

Thomas Kroma, City of Toledo Assistant Chief of Staff, acknowledged that no other city guidelines or standards govern placement of benches.

Under the ordinance:

Courtesy benches for the convenience of local bus patrons and members of the general public, which benches contain advertising matter, may be installed and maintained upon public thoroughfares and public sidewalks of the City by persons, firms or corporations in the manner and subject to the conditions and regulations prescribed by the following sections of this chapter.

TMC § 719.01.

A courtesy bench may not be installed without a permit from the Commissioner of Building Inspection and Code Enforcement (Commissioner), "on forms prescribed by such official." § 719.02(a). The total number of permits which may be issued "shall be at the discretion of the

Commissioner" and "[n]o more than one courtesy bench shall be permitted at any bus stop except" when the Commissioner determines that "conditions warrant." TMC § 719.02(b)-(c).

Section 719.05, governing permit issuance, states:

If the Commissioner . . . finds that the applicant has complied with all of the provisions of this chapter and the maintenance of a bench or benches at the proposed locations will not tend to obstruct passage or create a hazard to persons traveling on the public way in the vicinity thereof, he/she shall issue a permit; otherwise such application shall be denied.

Section 719.08 specifies the requirements for courtesy benches, including, inter alia:

(a) *No bench shall carry any political advertising* . . . nor shall any advertisement or sign on any such bench display the words "STOP," "LOOK," "DRIVE-IN," "DANGER," or any other word or words which might mislead or distract traffic.
. . .
(c) . . . . Benches shall be kept at all times in a neat, clean and usable condition and ice, snow, litter and debris shall be removed from the benches and the vicinity thereof in such a manner that each bench shall be accessible at all times.
. . .
(e) All bus benches at all locations shall maintain a trash receptacle affixed to the courtesy bench. The receptacle shall be capable of allowing water and other liquids to pass through . . . . The permittee is responsible to see that the trash receptacle is emptied on an as needed basis and that the area ten feet in diameter around the bus bench is maintained free of litter and debris.

(Emphasis supplied).

Chris Zervos, acting Commissioner of Building Inspection, testified that the specific words prohibited were likely to distract or mislead traffic.

The ordinance authorizes the Commissioner to revoke a permit for several reasons, including: "When continued maintenance of a bench at a specified location shall be deemed by the Commissioner . . . to be a hazard to pedestrian and vehicular traffic or prejudicial to the interest of the general public." TMC § 719.06(d).

3

Violation of the ordinance is a minor misdemeanor for the first offense and a fourth-degree misdemeanor for any second offense within a twelve-month period. TMC § 719.99.

Before adoption of the current ordinance, BBC had permits and had installed and legally maintained nearly 300 advertising benches on city property for many years. Shortly after the enactment of the new ordinance, BBC's permits expired.

BBC applied for renewals under the new ordinance. Toledo rejected BBC's requests, stating that the benches were not in compliance, in part because trash cans were not affixed as required by § 719.08(e).

Toledo filed criminal complaints against BBC for non-compliance with the ordinance on July 2, 2007. Toledo Municipal Court Case No. CRB-07-13787-0101.

BBC brought this action on July 6, 2007, challenging the ordinance by alleging three First Amendment violations, an Equal Protection claim, and a state law claim for tortious interference with economic relationships. I granted summary judgment in favor of BBC as to some of its claims. *Bench Billboard v. City of Toledo*, 690 F. Supp. 2d 651 (N.D. Ohio 2010).

BBC subsequently filed this motion seeking attorney's fees under § 1988. Toledo does not dispute that BBC is a prevailing party entitled to some fees and costs. It argues, however, that the amount claimed by BBC is excessive and asks that it be reduced.

### Discussion

Section 1988 of the Civil Rights Act, 42 U.S.C. § 1988, authorizes an award of attorney's fees to parties who have prevailed in litigation brought under § 1983. For the purposes of § 1988, a party prevails where because of the party's initiative, the judiciary has materially altered the legal

4

relationship between the parties. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).

A court calculates the amount of a fee award by determining the number of hours reasonably expended and the hourly rate that represents reasonable compensation, subject to any appropriate adjustments. *See*, *e.g.*, *Hensley v. Eckhart*, 461 U.S. 424, 429 (1983).

BBC claims $132,532 for attorneys' fees and $9,746.50 costs. Toledo asks me to reduce the fee award for two reasons.

First, Toledo alleges that federal law does not allow a prevailing party to recover fees for work performed on matters not part of the federal court proceeding. Toledo points specifically to 38.25 hours of attorney time BBC's counsel spent defending the ordinance violation citations in Toledo Municipal Court.

In addition, Toledo claims that, with regard to another 24.55 hours, BBC's descriptions are insufficient to determine whether counsel spent the time on the Municipal Court cases or on this lawsuit. Toledo therefore asks me to reduce the fee petition by 62.80 hours.

Second, Toledo contends I should further reduce BBC's fee petition because BBC prevailed on only some of its claims. According to Toledo, the two issues on which BBC prevailed were "based on well-settled legal principles." Thus, Toledo claims, BBC should have filed a a motion for judgment on the pleadings, rather than a more expensive motion for summary judgment. Toledo seeks an 84% reduction in the award. This, Toledo states, reflects "a reasonable relationship between the time expended and the results achieved." [Doc. 58, at 12].

5

## A. The Municipal Court Proceedings

Toledo filed its Municipal Court case on July 2, 2007—just days before BBC filed its complaint here. Toledo charged BBC with  "failure to obtain courtesy bench permits," under Chapter 719 of the Toledo Municipal Code. The complaint remained pending being marked off docket with a right to re-file on June 24, 2008. [Doc. 61].

BBC argues that because both the Municipal Court and federal proceedings involved functionally similar constitutional challenges to Chapter 719, the claims were related and therefore it deserves compensation from Toledo for its fees and costs from both proceedings. [Doc. 61]. Toledo argues that the facial similarity between the two proceedings is an insufficient basis for making it pay for fees engendered in the municipal court enforcement action. In Toledo's view, BBC simply cannot recover for work other than on the federal case. [Doc. 58]. Both parties have missed the mark.

Toledo's categorical contention that federal law precludes recovery for work that was not part of the federal proceedings is incorrect. For example, an award of fees for ancillary proceedings is proper if the work was "useful and of a type ordinarily necessary" to secure the relief requested in the primary proceeding. *Webb, supra,* 471 U.S. at 243 (1985). It is within the discretion of the district court to decide whether ancillary fees are appropriate. *Id.* at 243-44; *see also Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 561 (1986).

Nor is the key issue, as BBC contends, whether the proceedings in question are "directly related to the enforceability and constitutionality of Chapter 719," as they undoubtedly are. [Doc. 61 at 8]. The Sixth Circuit has denied recovery of attorney's fees relating to a criminal prosecution

6

even where the operative facts were identical to those in the civil action subject to § 1988. *Greer v. Holt*, 718 F.2d 206, 208 (6th Cir. 1983).

The question instead is whether the municipal proceedings are part of the wrong of which the plaintiff's federal civil rights action complained, such as wrongful arrest. *Compare Greer v. Holt*, 718 F.2d 206 (6th Cir. 1983) (fees not recoverable); *Venuti v. Riordan,* 702 F.2d 6 (1st Cir. 1983) (same); and *McKever v. Vondollen*, 681 F. Supp. 999 (N.D.N.Y. 1988) *with Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988) (fees recoverable); *Kerr v. City of Chicago*, 424 F.2d 1134 (7th Cir. 1970) (same); *Lykken v. Vavreck*, 366 F. Supp. 585 (D.Minn. 1973) (same).

Plaintiffs in *Borunda*, *Kerr*, and *Lykken* sought attorney's fees as elements of § 1983 claims, rather than under § 1988. For example, *Borunda* treated attorneys' fees in a criminal case as an element of damages in a subsequent civil case alleging arrest without probable cause, rather than as part of a fee award. As such, the costs of defending against an unlawful charge can legitimately be included in the damages suffered by the plaintiff, "where the expenditure is a foreseeable result of the acts of the defendant." *Kerr*, *supra*, 424 F.2d at 1134; *see also Borunda*, *supra*, 885 F.2d at 1389-90.

In *Greer, supra,* the Sixth Circuit declined to award attorneys' fees incurred in an underlying prosecution where the plaintiff sued police under § 1983, but clarified that it "expressed no opinion as to whether the client could recover attorneys' fees as part of a damage package as, for example, in a malicious prosecution suit." 718 F.2d at 207, n.1. The civil rights actions in *Greer*, *Venuti*, and *McKever* all dealt with § 1988 claims, and all denied attorney's fees for the criminal action.

Section 1988 expressly applies to suits brought under a provision of §§ 1981, 1982, 1983, 1985, and 1986, Title IX of Public Law 92-318, or Title VI of the Civil Rights Act of 1964. It does

7

not apply to criminal actions, unless the criminal prosecution itself was a violation of the plaintiff's civil rights, in which case fees may be recoverable an element of damages in the § 1983 action. An alleged civil rights violation that happens to arise from the same facts as a criminal prosecution does not entitle the exonerated defendant to recover attorney's fees for prior criminal proceedings. *See, e.g., Greer, supra,* 718 at 208 (§ 1988 does not provide for fee award for attorney's work in criminal case underlying § 1983 suit alleging assault by police officer).

In contrast, the claims here are for fees under § 1988.[1] [Doc. 61 at 2]. This provision permits fees only for actions brought to enforce the federal civil rights statutes. It is irrelevant for the § 1988 inquiry that "all of the time spent by BBC counsel in the Municipal court case could have been avoided if Toledo had simply agreed to stay the Municipal Court case," [Doc. 61 at 3], or that "the damage regarding attorney fees was self-inflicted by Toledo." [Doc. 54 at 7].

To apply § 1988 to this case would expand the scope of the statute to include attorney's fees in any criminal proceeding in which a defendant prevails by showing, for example, that a state law or practice is contrary to the federal Constitution or laws. *See, e.g., Venuti*, *supra,* 702 F.2d at 9 (denying plaintiff's claim for expenses in defending a state criminal action brought under the statutes he succeeded in having declared unconstitutional). Because BBC's criminal defense was not an action within the scope of § 1988, I find that the hours devoted to it are not compensable under § 1988.[2]

---

[1] I do not reach the issue of whether the attorney's fees for the criminal proceeding may be a proper part of a claim for compensatory damages for violations of BBC's constitutional rights, and hold only the fees are not part of a fee award under § 1988 in the federal civil case.

[2] Courts in other circuits have held that attorney's fees for work done in an earlier criminal proceeding may be allowable to the extent the work proved directly relevant to the successful prosecution of a later civil rights action. *See, e.g., McDonald v. Armontrout,* 860 F.2d 1456, 1462

Though I agree with Toledo that BBC should not recover for time billed in connection with the Municipal Court proceedings, I can only adopt in part their analysis of the statements from BBC attorneys to the plaintiff.

Toledo identifies 38.25  hours in the law firms' fee statements [Doc. 54-1; Doc. 54-2] as "clearly not expended in [the federal civil] case." [Doc. 58, at 3]. I agree, and reduce the fee petition by 38.25 hours.

Toledo also identifies another 24.55 hours as not apparently being related to the federal case. [Doc. 58, at 4-5]. It is true that many of the activity descriptions, standing alone, do not provide much guidance. However, in their accompanying affidavits, the attorneys explain that Mr. Heywood and Shumaker, Loop & Kendrick, LLP, "did all of the work relating to the case filed in Toledo Municipal Court [and] Mr. Holzapfel and his firm [Drew Law Firm Co.] prepared BBC's Complaint and Motion for Summary Judgment with minimal assistance from our firm." [Doc. 54-2, at 3]. Keeping this in mind, I find it is inappropriate to deduct additional hour entries from the Drew Law Firm fee statement for insufficiently identifying to which BBC case the entries refer.

---

(8th Cir. 1988) (quoting *Perkins v. Cross*, 728 F.2d 1099, 1100 (8th Cir. 1984)); *Craig v. Christ*,1999 WL 1059704 (D. Ind. 1999) ("exclud[ing] only those entries that appear to be devoted exclusively to the criminal case."); *Fletcher v. O'Donnell*, 729 F. Supp. 422, 429-30 (E.D. Pa. 1990) (allowing § 1988 fees for a portion of the state criminal trial because the attorney could have billed for reviewing the trial transcript). However, the Sixth Circuit has not adopted this approach, and generally does not grant attorneys fees when a party chooses to defend criminal proceedings before instituting civil rights litigation relating to the matter. *Greer, supra,* 718 F.2d at 208. In any case, BBC has not sufficiently alleged that work done on the criminal proceeding was directly relevant to the subsequent civil rights actions. Instead, BBC alleges that Mr. Holzapfel and Mr. Heywood "spent a significant amount of time trying to obtain the agreement of the City to refrain from enforcement of the Ordinance pending a resolution by this Court." [Doc. 54 at 7].

9

Some of the entries Toledo objects to in the documentation provided by Mr. Heywood do suggest some work on the federal complaint. In particular, the 07-05-07 entry for 5.10 hours includes "work on Complaint and related documents for filing in Bench Billboard v. City of Toledo," and the 10-04-07 entry for 2.60 hours includes a "telephone conference . . . regarding Rule 26 disclosures and potential referral to Magistrate Judge." [Doc. 54-2, at 6, 9]. These entries, however, lack detail sufficient for me to determine whether the time spent was more than negligible. Because Mr. Heywood's affidavit described his firm's assistance on the federal matter as "minimal," and because the entries identified by Toledo in their Opposition [Doc. 58] appear to confirm this description, I reduce the fee petition by an additional 13.80 hours.

Deducting the hours from the final award is no small task, given that BBC's attorneys billed at different rates, and Mr. Heywood charged four different rates during the times affected by this ruling. BBC shall submit a revised time and fee statement deducting the designated municipal court entries.

### B. Partial Success

BBC is a prevailing party in its case before this court, and as such is entitled to an award of a reasonable attorney's fee. As Toledo points out, however, because BBC achieved only partial success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, *supra*, 461 U.S. at 436.

BBC's suit alleged three First Amendment violations, an Equal Protection claim, and a state law claim for tortious interference with economic relationships. BBC prevailed on two of its First Amendment claims.

Although BBC argues that its claims were all based on a "common core of facts," the Supreme Court has held that partial success may require reduction "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, *supra*, 461 U.S. at 436. In determining a reasonable fee, I must consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435.

While I recognize that BBC's success on the First Amendment claims is not trivial, the fact remains that BBC's overall success was limited, and some reduction is appropriate. Unfortunately, "[t]here is no precise rule or formula for making these determinations." *Id.* at 436.

The Sixth Circuit gives some guidance. In *Kentucky Restaurant Concepts v. City of Louisville*, 117 Fed. Appx. 415, 421 (6th Cir. 2004) (unpublished disposition), the Sixth Circuit affirmed a district court's decision to reduce the amount of attorney's fees by 35% to reflect partial success.

The plaintiffs had sought to have an adult entertainment regulatory ordinance declared unconstitutional. The district court held that most of the substantive provisions of the ordinance were constitutional, but it found that an inspection provision was unconstitutional and enjoined the ordinance on that basis.

In considering the reasonable amount of attorney's fees, the district court pointed out that because only the procedural aspects of the ordinance were constitutionally defective, the City could easily draft a new ordinance comporting with the court's order and making the substantive provisions enforceable. The district court concluded that plaintiffs achieved a "good" but not an "excellent" result, and that a reduction was therefore warranted. *Id.*

11

BBC similarly received a "good" but not an "excellent" result in its § 1983 claims. Its First Amendment successes entitles it to fees, but its success is limited, both in light of its original claims and the fact that the provisions I found unconstitutional are severable, so that BBC will have to comply with the remainder of the ordinance.

Parsing out what time attorneys spent on which claims is difficult, if not impossible, and it is not sensible to expect lawyers to keep track of time per every single claim and defense. This is especially true where such claims arise from common facts. A 25% reduction fairly acknowledges that while BBC prevailed on the First Amendment issues, it achieved only partial success.

### C. Reasonableness of Billing Increments

Before determining the final award due to the BBC, fairness dictates I address the BBC's attorneys' use of quarter, rather than tenth of an hour billing increments. Although Toledo did not raise this issue, § 1988 grants me the discretion to determine what fee is "reasonable." The purpose of § 1988 is to make sure that "competent counsel will be available to all persons with bona fide civil rights claims." *Hensley*, *supra*, 461 U.S. at 447 (Brennan, J., concurring). I must therefore make certain to award market-rate fees and to award fees only for time reasonably expended. *Id.*

In general, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, *supra*, 461 U.S. at 433. The documentation offered in support of the hours charged must be of sufficient detail to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of such litigation. *United Slate Tile and Composition Roofers v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502, n.2 (6th Cir.

12

1984). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, *supra*, 461 U.S. at 433.

I have previously stated that quarter-hour billing increments "invite downward adjustment" of attorney's fees. *Corbis Corp. v. Starr*, 2010 WL 2572049, *2 (N.D. Ohio); *Tierney v. City of Toledo*, 1989 WL 161453, *6 (N.D. Ohio).

While I recognize that quarter-hour billing may be the norm at many law firms, I nevertheless agree with the judgment of many commenters and courts that "[t]he quarter-hour billing increment is suspect." Douglas R. Richmond, *The New Law Firm Economy, Billable Hours, and Professional Responsibility*, 29 Hofstra L. Rev. 207, 234 (2000). As the court observed in *In Re Tom Carter Enterprises*, "[v]ery few telephone calls last more than one-tenth of an hour, and . . . it rarely takes more than one-tenth of an hour to read an incoming letter or write a short outgoing letter." 55 B.R. 548, 549 (C.D. Cal. 1985).

Many courts have suggested, however, that billing in quarter-hour increments is not *per se* unreasonable. *See Diffender v. Gomez-Colon*, 587 F.3d 445, 455 (1st Cir. 2009) (explaining the reduction imposed by the district court was not due to a finding that "billing in quarter-hour increments per se unreasonable"); *Fox v. Vice*, 2010 WL 3581902, *2 (W.D. La.) ("In the absence of [evidence that the timekeeping is unreasonable], district courts will not assume that an attorney's billing method is unreasonable."); *Winterstein v. Stryker Corp. Group Life Ins. Plan*, 2006 WL 1071884, *2 (N.D. Cal.) (finding that statute calling for "reasonable attorney's fees," did not limit recovery to billing increments by the tenth of the hour).

I find, however, that in general, time records kept in increments of quarter-hours is not appropriate in a § 1983 case. Quarter-hour increments are a fee-enhancing, rather than a fee-

constraining, mechanism. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948-49 (9th Cir. 2007); *Robinson v. Plourde*, 2010 WL 2164433, *5 (D. Hawaii) (reducing award where attorney's "practice of billing in quarter-hour increments . . . appear[ed] to have resulted in some excessive billing."); *Diffenderfer v. Gomez-Colon*, 606 F. Supp. 2d 222, 229 (D. Puerto Rico 2009) ("Billing in quarter-hour increments is an unreasonable practice that will tend to inflate Plaintiffs' total hours billed by adding time to each entry."), *aff'd*, 587 F.3d 445 (1st Cir. 2009); *Dzwonkowski v. Dzwonkowski*, 2008 WL 2163916, *26 (S.D. Ala.); *see Republican Party of Minn. v. White*, 456 F.3d 912, 920 (8th Cir. 2006) ("We agree that quarter-hour increment billing is less reliable than tenth-hour billing and risks bill inflation."); *Brumitte v. Astrue*, 2009 WL 3208594, *4 (E.D. Tenn.) ("[T]he court reiterates that quarter-hour billing is disfavored in this district.").[3]

BBC's counsel Mr. Holzapfel kept his time records, with the exception or a single entry, in increments of quarter-hours. Mr. Holzapfel bills a full quarter-hour for chores such as reviewing email, reviewing correspondence, telephone conferences, drafting emails, reviewing revisions, and other menial items. *See* [Doc. 54-1]. Some of these chores probably did occupy fifteen full minutes of counsel's time, but doubtless many of them did not. Section 1988 requires that I award no greater amount of attorney's fees than is reasonable, and I cannot accept that the billing in this case is reasonable.

Adjusting improper billing entries to reflect more accurate time increments may be a practical impossibility at this point in the litigation. To compensate for inflation imposed by quarter-

---

[3] I note that several bankruptcy courts have favored tenth of an hour billing segments. *E.g.*, *In re Durastone Co.*, 179 B.R. 15, 17 (Bankr. D.R.I. 1995); *In re Stoecker*, 114 B.R. 965, 976 (Bankr. N.D. Ill. 1990); *In re Pothoven*, 84 B.R. 579, 586 (Bankr. S.D. Iowa 1988); *In re Wabash Valley Power Ass'n*, 69 B.R. 471, 478 (Bankr. S.D. Ind. 1987).

14

hour billing increments, other courts have reduced the attorney's fee award by 20%. *Welch*, *supra*, 480 F.3d at 948-49; *Robinson*, *supra*, at \*5; *Diffender*, *supra*, 606 F. Supp. 2d at 229; *see also In Re R & G Properties, Inc.*, 2009 WL 1396285, \*5 (Bkrtcy D. Vt.) (reducing fees allocable to all time entries in the amount of 0.25 hours by 50%).

Billing in quarter-hour increments generates a fee that is 15% higher than billing in a tenth of an hour. Unless a fee applicant adjusts it statements to conform to actual time spent, it appears fair and reasonable for a court to split the difference. Accordingly, I will reduce Mr. Holzapfel's hours by 7.5%.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT plaintiff's counsel be, and hereby is ordered by November 1, 2010, to submit a final revised time and fee statement and proposed order awarding attorneys' fees and costs in accordance with the foregoing.

So ordered.

/s/James G. Carr
U.S. District Judge