IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Bench Billboard Company,  Case No. 3:07CV2027

    Plaintiff

v.  ORDER

City of Toledo,

    Defendant

This is a suit by plaintiff Bench Billboard Company (BBC) about the City of Toledo's regulation of bus stop courtesy benches. Toledo enacted a new ordinance regulating such benches, TMC §§ 719.01–11, in February, 2007.

BBC filed this suit under 42 U.S.C. § 1983, alleging that the ordinance violates its right to freedom of speech, equal protection, and due process. BBC also asserted a cause of action under Ohio common law for tortious interference with prospective economic advantage.

On the parties' cross-motions for summary judgment, I held that: 1) two provisions of the ordinance violate the First Amendment; 2) these two provisions are severable from the remainder of Chapter 719; 3) BBC failed to show an equal protection violation; 4) Section 1983 does not create substantive rights; and 5) because Toledo had not removed any of BBC's benches, Toledo had not tortiously interfered with BBC's prospective economic relationships. [Doc. 44]; *Bench Billboard v. City of Toledo*, 690 F. Supp. 2d 651 (N.D. Ohio 2010).

Pending are the parties' cross-motions for summary judgment as to damages. For the reasons discussed below, Toledo's motion is granted and BBC's motion is denied.

## Background

Before Toledo adopted the current ordinance, BBC had legally installed and maintained nearly 300 advertising benches on city property for many years. Shortly after passage of the new ordinance, BBC's permits expired.

BBC applied for renewals under the new ordinance. Toledo rejected BBC's requests, stating that the benches were not in compliance, in part because trash cans were not affixed as required by § 719.08(e).

BBC challenged the ordinance by alleging three First Amendment violations, an Equal Protection claim, and a state law claim for tortious interference with economic relationships.

I held that the ordinance's prohibition of political speech and allowance of license revocation based on a finding that a bench is "prejudicial to the interest of the general public" were unconstitutional. I therefore granted summary judgment in favor of BBC as to two of its First Amendment claims and enjoined Toledo from enforcing those portion of the ordinance. [Doc. 44]; *Bench Billboard v. City of Toledo*, 690 F. Supp. 2d 651 (N.D. Ohio 2010).

I also granted BBC attorneys fees as a prevailing party under 42 U.S.C. § 1988. [Doc. 64].

The sole remaining issue in this case is damages. The parties have filed cross-motions for summary judgment. [Docs. 63, 71].

## Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the

burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

**Discussion**

BBC claims it is entitled to three types of damages resulting from Toledo's unconstitutional prohibition of political advertising: 1) loss of revenue since 2005; 2) permit fees assessed since 2005; and 3) sign contractor renewal fees assessed since 2005. Toledo asserts that the request for damages should be dismissed as a matter of law because BBC cannot show that it suffered any injury as a result of the unconstitutional provisions of the ordinance.

Toledo argues that even if BBC is owed compensatory damages, those damages should be calculated from 2007, when Toledo passed the ordinance, and should not include permit fees or sign contractor renewal fees. These fees, Toledo states, are unrelated to the unconstitutional provisions of the ordinance. Because I find that all of BBC's claims for damages fail as a matter of law, I need not address as of when such damages should be calculated.

**A. Loss of Revenue**

**1. Legal Standard**

Section 1983 entitles plaintiffs to seek compensation "for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 246, 254 (1978). The purpose of compensatory damages is to compensate the injured party for the costs of the injury. *Pembaur v. Cincinnati*, 882 F.2d 1101, 1104 (6th Cir. 1989) (citing *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)). No compensatory damages may be awarded absent proof of actual injury. *Pembaur*, *supra*, 882 F.2d at 1104 (quoting *Stachura*, *supra*, 477 U.S. at 309-10)."The abstract value of a constitutional right may not form the basis for § 1983 damages." *Stachura*, *supra*, 477 U.S. at 308.

"The level of damages [in a § 1983 case] is ordinarily determined according to principles derived from the common law of torts." *Pembaur*, *supra*, 882 F.2d at 1104 (quoting *Stachura*, *supra*, 477 U.S. at 306). A court therefore must determine "whether there is a common law analog to the constitutional tort being alleged." *Pembaur*, *supra*, 882 F.2d at 1105 (internal citations omitted).

Ohio law governs the disposition of this issue. 42 U.S.C. § 1988(a); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 598 (6th Cir. 2006); *Tinch v. Dayton*, 1996 WL 77445, *1 (6th Cir.) (unpublished disposition) ("[Section] 1983 does not provide adequate guidance to determine the measure of damages available in an action for a violation of a claimant's civil rights. Accordingly, 42 U.S.C. § 1988 directs that this Court turn to the common law of the forum state, in this case Ohio, to fill in the interstices in the federal framework.").

Under Ohio law, "a plaintiff may recover profits lost as a result of a defendant's tortious conduct if such damages may naturally be expected to follow from the wrongful act and if the damages are reasonably ascertainable." *Mich. Millers Mut. Ins. Co. v. Christian*, 153 Ohio App. 3d

4

311, 371 (2003) (internal citations omitted). "The determination of the existence and amount of lost profits is a question of fact." *Kosier v. DeRosa*, 169 Ohio App. 3d 150, 158 (2006). Lost profits must be proved with calculations based on facts; mere assertions that a plaintiff would have made a particular amount of profits are insufficient. *Gahanna v. Eastgate Props.*, 26 Ohio St. 3d 65, 68 (1988)*; UZ Eng'd Prod. Co. v. Midwest Motor Supply Co., Inc.*, 147 Ohio App. 3d 382, 400 (2001).

Recovery of damages for lost profits, as with all damages claims, requires the plaintiff to show damages with reasonable certainty. *Ace Vending Co. v. Davidson*, 8 Ohio App. 3d 328, 329 (1982). "[L]ost profits may be established with reasonable certainty either directly or through an expert witness." *Christian*, *supra*, 153 Ohio App. 3d at 312. Reasonable certainty does not require mathematical precision, nor does it require clear and irrefutable proof, "but profit loss cannot be left to mere conjecture and must be capable of measurement based upon known reliable factors without undue speculation." *Id.*

Under Ohio law, a plaintiff must demonstrate both the amount of lost profits and their existence with reasonable certainty. *Eastgate*, *supra*, 26 Ohio St. 3d at 65; *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 12 Ohio St. 3d 241, 243 (1984). *But cf. Blue Diamond Coal Co. v. United Mine Workers of Am.*, 436 F.2d 551, 561 (6th Cir. 1970) ("[O]nce the fact of damages has been properly shown, uncertainty as to their amount will not foreclose recovery.").

### 2. BBC's Evidence Is Insufficient to Show Damages

BBC claims $55,641.60 in lost revenue. BBC's president, Bruce Graumlich, arrived at this figure by performing the following calculation:

> Average of 7 candidates/issues x 6.4 benches per candidate/issue x $138 per ad x 3 months x 3 election years.

5

To generate the numbers used in this calculation, Graumlich reviewed BBC's electronic records for cities he deemed similar to Toledo in size: Cincinnati, Columbus, Lansing, Ypsilanti, Flint and Louisville. Graumlich testified that he spent "an hour or less" reviewing BBC's records. [Doc. 62, at 23].

Based on this review, Graumlich determined that BBC placed political advertisements for an average of seven candidates or political issues in each of the above cities during election years. He also determined that an average of 6.4 benches were rented for each candidate or issue for an average of three months. Graumlich reasoned that most elections occurred on even numbered years and thus calculated damages for the years 2006, 2008 and 2010. Graumlich has no documentation to support these figures.

When questioned in deposition, Graumlich could not recall anyone requesting political advertising in Toledo. He also admitted that no one had sought political advertising since my March 2010 order enjoining Toledo from enforcing the prohibition on political advertising on benches.

In answering interrogatories, BBC explained that its computation of damages "is based upon: 1) a review of numerous corporate records [. . .] and 2) the memory and experience of Bruce T. Graumlich." [Doc. 62, Ex. 1, at 4]. Together with Graumlich's deposition and affidavits, this is the sum of BBC's evidence in support of its claim for lost revenue.

Compensatory damages cannot be awarded on such speculative evidence. BBC has shown neither the fact of damages nor a reasonable basis for their computation.

I note initially that BBC has provided no evidence that it failed to rent all courtesy bench advertisement space during the time period it claims lost revenue. Absent such a showing, BBC cannot prove any loss of revenue from the prohibition on political advertisements.

Even assuming that BBC had unrented advertisement space available, it has provided no evidence to support its assertion that but for the prohibition, it would have rented bench space for political advertisements.

BBC computed the average number of political advertisements it would have placed in Toledo based on records from Columbus, Cincinnati, Lansing, Ypsilanti, Flint and Louisville. BBC fails to explain how these cities are similar to Toledo in size[1] or any relevant quality that would demonstrate whether it would have rented space for political advertisements in Toledo but for the prohibition.

Without any documentation, and in the face of Graumlich's admission that as of August 25, 2010, BBC had yet to sell a political advertisement in Toledo during an election year despite the fact that the ban had been lifted in March, BBC's claim for lost revenue is speculative at best. A reasonable finder of fact could not conclude based on this evidence that BBC had lost revenue.

Even if BBC had set forth evidence demonstrating the probable existence of damages, there is no reasonable basis for the amount alleged. BBC has not shown that Graumlich is qualified to make these determinations. Graumlich's calculations and methods prove him to be neither a political scientist nor an economist. There is no logical basis for his selection of comparable cities, nor is there any documentation of how he arrived at the average of seven political campaigns or issues per year. There is no documentation for how he came to an average of 6.4 benches rented for each issue

---

[1] Taking judicial notice of the census figures for these cities demonstrates that they bear little resemblance to either Toledo or each other in terms of population. For example, according to U.S. Census data for the year 2000, the population of Toledo was 313,619; Columbus, 711,470; and Ypsilanti, 22,362. U.S. Census Bureau, State & County Quick Facts, http://quickfacts.census.gov/qfd/index.html (last visited Jan. 11, 2011). The cities are also distinct in terms of geography. *Id.* "Size" hardly appears a proper basis for comparison, and BBC provides no other.

or candidate, nor for the average of three months duration. Even the most casual student of statistics cannot help noticing the glaring flaws in this method.[2] These figures do not provide a reliable basis for the computation of lost revenue, and therefore, no such damages may be awarded.

My conclusion accords with Ohio case law. In *Eastgate Properties, Inc.*, *supra*, 36 Ohio St. 3d at 67, the Ohio Supreme Court upheld the trial court's denial of damages for lost profits. As in the instant case, the only testimony defendant Eastgate provided on lost profits came from the company's president. *Id.* Eastgate's president arrived at the lost profits figure by comparing a project in suburban Gahanna with an existing Columbus facility. *Id.* The court concurred with the trial court that his comparison failed to demonstrate either the existence or amount of damages. *Id.* The similarities between *Eastgate* and the claims set forth by BBC are unmistakable. BBC's lost revenue claim fails as a matter of law.

### B. Permit Fees and Sign Contractor Renewal Fees

BBC's inclusion of permit fees and sign contractor renewal fees in its damages claim is improper.

The ordinance charges permit fees per courtesy bench. TMC § 719.04. The application for a permit does not require disclosure of the nature of the advertisement. *See* TMC § 719.03. While under the unconstitutional provisions of the ordinance, a permit could be revoked for placing a political advertisement on a courtesy bench, Graumlich testified that Toledo never revoked BBC's permit due to a political advertisement.

---

[2] For example, BBC could have placed twenty-one advertisements in both Columbus and Louisville and no advertisements Cincinnati, Lansing, Flint or Ypsilanti. This would yield an average of seven political advertisements but would not give any indication of how many political advertisements (if any) would have been placed in Toledo but for the ban.

Sign contractor renewal fees are not a part of the challenged ordinance, but rather are required under Toledo Municipal Code § 1383.02. The fee is a one-time annual renewal fee of $140.00, which all sign contractors must pay before they do business with the city. The fee is unrelated to the number or type of signs maintained in Toledo, and is unrelated to the unconstitutional prohibition of political advertisements on courtesy benches.

The fees paid bear no relation to BBC's First Amendment claims, and BBC is not entitled to recover them.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT Toledo's motion for summary judgment [Doc. 63] be, and the same hereby is granted. BBC's motion for summary judgment [Doc. 71] is therefore denied, and its damages claims are dismissed with prejudice.

So ordered.

s/James G. Carr<br>
United States District Judge